DA 11-0428

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 13

ANACONDA PUBLIC SCHOOLS,
BOARD OF TRUSTEES OF
ANACONDA SCHOOL DISTRICT NO. 10,

        Petitioner and Appellant,

  v.

JAMES D. WHEALON,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Third Judicial District,
                    In and For the County of Anaconda-Deer Lodge, Cause No. DV 10-41
                    Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Brenda Wahler, Attorney at Law; Helena, Montana

        For Appellee:

        Tony C. Koenig, Montana School Boards Association; Helena, Montana

                    Submitted on Briefs:  December 14, 2011

                              Decided:  January 24, 2012

Filed:

              _____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 James D. Whealon (Whealon) appeals from an order of the Third Judicial District, Anaconda-Deer Lodge County, which reversed the ruling of the State Superintendent of Public Instruction and reinstated the County Superintendent's summary ruling in favor of Anaconda Public Schools, Board of Trustees of Anaconda School District No. 10 (District). We affirm. We address the following issues:

¶2 *1. Did the District Court err in holding that a county superintendent has authority to grant summary judgment?*

¶3 *2. Did the District Court err in reinstating summary judgment in favor of the District?*

¶4 *3. Did the District Court err in failing to award attorney fees?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 The District employed Whealon as district superintendent from July 1, 2000 through August 15, 2008, pursuant to a series of nearly identical employment contracts. Whealon's last contract covered the time period between July 1, 2006 and June 30, 2009, although he retired on August 15, 2008. The contract provided, in pertinent part:

> 2. TERM
>
> The BOARD, by and on behalf of the District, employs the SUPERINTENDENT, and the SUPERINTENDENT accepts employment as District Superintendent for the District for a term of three (3) years from July 1, 2006 to June 30, 2009.
>
> .   .   .

## 11. HEALTH, DISABILITY AND OTHER INSURANCE

During the term of this Agreement, the District shall pay the premium for coverage for group health for the SUPERINTENDENT and dependents in accordance with the District's plan of insurance on the same basis as other administrative employees of the District.

.   .   .

## 17. RETIREMENT, DEATH, DISABILITY

This Agreement shall be terminated upon the death of the SUPERINTENDENT or upon the SUPERINTENDENT'S retirement . . . .

¶6 Upon retirement, Whealon asserted that, under the terms of his contract, he was entitled to payment of his health insurance premiums by the District until he reached the Medicare eligibility age of 65. Whealon's successor, Tom Darnell (Darnell), advised Whealon that he was not eligible for continued payment of his premiums by the District and that Whealon would need to pay the premiums himself to maintain his health insurance coverage. Whealon filed a formal grievance, which Darnell denied. Whealon appealed to the District's Board of Trustees, which also denied his claim.

¶7 Whealon appealed to the County Superintendent of Anaconda-Deer Lodge County, and, after two substitutions of county superintendents, Rachel Vielleux (Vielleux), County Superintendent of Missoula County, presided over the proceeding. The District filed a motion for summary judgment, which Whealon opposed. Whealon argued that summary judgment was inappropriate because there were issues of material fact in dispute. He argued alternatively that if Vielleux concluded no issues of material fact existed, then he was entitled to summary judgment rather than the District. Vielleux

3

granted summary judgment to the District, holding that the language of the contract was unambiguous and that Whealon was not entitled to the claimed benefits beyond the date of his retirement.

¶8 Whealon appealed to the State Superintendent of Public Instruction, Denise Juneau (Juneau). Juneau determined that entry of summary judgment is an inappropriate disposition of an administrative appeal of a contested case under Title 10, chapter 6 of the Administrative Rules of Montana. On the merits of the dispute, Juneau concluded, "[i]t is certainly not clear if the language contained in Whealon's employment contract intended to include payment of insurance premiums after his retirement from the district. The language in Whealon's employment contract is ambiguous." Juneau therefore reversed and remanded the case to Vielleux for an evidentiary hearing.

¶9 The District appealed Juneau's decision to the Third Judicial District Court. After briefing and oral argument, the District Court reversed Juneau's ruling and reinstated Vielleux's ruling that the contract was unambiguous and that the District was entitled to summary judgment. Whealon appeals. Further facts will be discussed herein.

**STANDARD OF REVIEW**

¶10 "Section 2-4-704, MCA, sets forth the statutory standards for judicial review of administrative decisions." *In the Matter of the Proposed Disciplinary Treatment of the Occupational Veterinarian's License of Jeffrey C. Peila*, 249 Mont. 272, 279, 815 P.2d 139, 144 (1991); *In the Matter of the Fair Hearing of Hofer*, 2005 MT 302, ¶ 12, 329 Mont. 368, 124 P.3d 1098. "This Court has interpreted § 2-4-704, MCA, to mean that an

4

agency's findings of fact are subject to a 'clearly erroneous' standard of review while an agency's conclusions of law will be upheld if the agency's interpretation of law is correct." *Peila*, 249 Mont. at 279 (citing *Steer, Inc. v. Dept. of Revenue*, 245 Mont. 470, 474, 803 P.2d 601, 603 (1990)).

## DISCUSSION

¶11    *1. Did the District Court err in holding that a county superintendent has authority to grant summary judgment?*

¶12    Whealon argues that Superintendent Juneau correctly held that summary judgment is an inappropriate disposition in a contested case before a county superintendent, noting that in *L.O. v. Plentywood Sch. Dist. No. 20*, OSPI 308-06 (2007), the Superintendent "strongly discourage[d]" the practice of entering a decision without conducting an evidentiary hearing.

¶13    The District responds that if no material facts are in dispute, an evidentiary hearing would be redundant and unnecessary, as only questions of law would remain to be decided by the county superintendent. In such cases, the District argues, "the County Superintendent's obligation under ARM 10.6.104 to 'hear the appeal' would be satisfied by considering the parties' opposing legal arguments on the questions of law to be decided." For purposes of this case, the District asserts that because Vielleux determined the contract language was unambiguous, the intent of the parties was a question of law, citing *Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶¶ 16-17, 330 Mont. 282, 127 P.3d 436 ("The construction and interpretation of a written contract is a question of law

5

. . . when a contract term is ambiguous, interpretation of the term involves determining a question of fact regarding the intent of the parties to the contract." (citations omitted)).

¶14   Noting that both Admin. R. M. 10.6.104(3) and § 20-3-210(3), MCA, provide that the county superintendent "shall hear the appeal and take testimony in order to determine the facts" related to the controversy, the District Court reasoned:

> [A]n evidentiary hearing is not required under the Montana Administrative Procedure Act when there are no material facts in dispute.  Rather, upon finding of a complete absence of disputed material facts, an administrative hearing officer may summarily dispose of the case by entering judgment as a matter of law based on such undisputed material facts.  The same reasoning and rule of law applies to contested case hearings before county superintendents under Section 20-3-210, MCA, and ARM Chapter 10, part 6.

The District Court also noted Admin. R. M. 10.6.108, which requires the county superintendent to conduct a prehearing conference to consider "the possibility of obtaining admissions of fact and documents which will avoid unnecessary proof . . . [and] such other matters as may aid in the disposition of the action," as well as our decision in *Peila*, 249 Mont. 272, 815 P.2d 139.

¶15   In *Peila*, we interpreted provisions of the Montana Administrative Procedure Act (MAPA), specifically, § 2-4-601, MCA ("In a contested case, all parties must be afforded an opportunity for hearing after reasonable notice"), and § 2-4-612, MCA ("Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved.").  *Peila*, 249 Mont. at 280-81, 815 P.2d at 144.  Summary judgment was granted by the Board of Horse Racing against Peila, and, on appeal, he argued that he had

6

a right to an evidentiary hearing. *Peila*, 249 Mont. at 280, 815 P.2d at 144. We held that entry of summary judgment by the Board without a hearing was appropriate:

> Procedural due process requires that parties be given reasonable notice and a reasonable opportunity to be heard; these due process requirements are reflected in MAPA in §§ 2-4-601, and 2-4-612(1), MCA. Section 2-4-612(1), MCA, provides that '*[o]pportunity* shall be afforded all parties to respond and present evidence and argument on all issues involved." (Emphasis added.) However, *due process does not require development of facts through an evidentiary hearing when there are no material factual issues in dispute.*

*Peila*, 249 Mont. at 280-81, 815 P.2d at 144 (emphasis added) (citations omitted).

¶16 We agree with the District Court. Section 20-3-210, MCA, and Admin. R. M. 10.6.104, like the statutes at issue in *Peila*, are silent regarding summary disposition. However, no purpose would be served by conducting an evidentiary hearing where there is an absence of disputed material facts, as testimony is unnecessary. In such cases, consistent with our ruling in *Peila*, a county superintendent may summarily dispose of a case by entering summary judgment.

¶17 Whealon also argues the District Court erred by reasoning that he acquiesced to summary disposition because he offered the alternative argument to the County Superintendent that, if no material issues of fact existed, then he was entitled to summary judgment. He argues he was entitled to plead alternatively under Rules 8(a) & (d), M. R. Civ. P., and that "[a]ppellant simply made a standard alternative argument before the County Superintendent of School and in doing so did not forfeit his right to simultaneously maintain that there were disputed issues of material fact." Whealon is correct that such alternative pleading is permitted and that he retained the right to argue

7

on appeal that issues of fact precluded summary judgment. However, Whealon misses the District Court's point, which is that he argued for the first time on appeal that the County Superintendent was without authority to enter a summary disposition, despite requesting that very relief from the County Superintendent. The District Court did not err in reasoning that Whealon's cross motion for summary judgment before the County Superintendent, without more, acquiesced in the County Superintendent's authority to enter a summary disposition. *See Peila*, 249 Mont. at 281, 815 P.2d at 145 ("There were no material factual issues in dispute in the present case . . . . In addition, the appellant himself moved for summary judgment, thereby acquiescing to a summary disposition of the proceedings.").

¶18   *2.  Did the District Court err in reinstating summary judgment in favor of the District?*

¶19   We turn to the merits of the entry of summary judgment. The dispute between the parties centers on whether Paragraph 11 of the Agreement is ambiguous. It states:

> 11.  HEALTH, DISABILITY AND OTHER INSURANCE
>
> During the term of this Agreement, the District shall pay the premium for coverage for group health for the SUPERINTENDENT and dependents in accordance with the District's plan of insurance on the same basis as other administrative employees of the District.

¶20   Whealon argues that the phrases "in accordance with the District's plan of insurance" and "on the same basis as other administrative employees of the District" render the contract ambiguous because extrinsic or parol evidence must be considered to determine the District's plan of insurance and the identity of the other administrative

8

employees. The District counters that the meanings of these phrases are uncontested but that, more importantly, these phrases are irrelevant. Because paragraph 11 states that "[d]uring the term of this Agreement, the District shall pay the premium for coverage . . .," Whealon's eligibility for this benefit ended when the Agreement's term ended. Paragraph 17 provides that the superintendent's retirement terminates the Agreement.

¶21 "[W]hether an ambiguity exists in a contract is a question of law." *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851; *Wurl*, ¶ 17. "An ambiguity exists where the language of a contract, as a whole, reasonably is subject to two different interpretations." *Wurl*, ¶ 17. If the court finds that contract language is ambiguous, it may consider extrinsic or parol evidence to resolve the ambiguity. *See* § 28-2-905, MCA; *Baker Revocable Trust*, ¶¶ 19-21. However, if the court finds the language to be unambiguous, then the plain language of the contract will govern, and the court can look no further. *Wurl*, ¶ 16 ("where a contract's terms are clear and unambiguous, a court must apply the language as written.") (citations omitted). Under MAPA, administrative agencies are bound by common law and statutory rules of evidence. Section 2-4-612(2), MCA.

¶22 We agree with the District Court's determination that the language of the Agreement governing this dispute is unambiguous and that the District is entitled to judgment. Because the language is not reasonably subject to two interpretations, we need not, and must not, look to extrinsic evidence. The term of the Agreement was from July 1, 2006 until Whealon's retirement on August 15, 2008. Paragraph 11 of the

9

Agreement states that, "*During the term of this Agreement*, the District shall pay the premium for coverage for group health for [Whealon] . . . ." (Emphasis added.) This language can only mean that the District would pay Whealon's health insurance premiums from July 1, 2006 to August 15, 2008, and not beyond that time period. The other specifics of the benefit that may be governed by the phrases "in accordance with the District's plan of insurance" and "on the same basis as other administrative employees of the District" became irrelevant upon Whealon's retirement because the Agreement terminated at that time, and his eligibility for the benefit ceased altogether.

¶23    *3. Did the District Court err in failing to award attorney fees?*

¶24    Whealon asserts that he is entitled to attorney fees for the portion of this action that constitutes a "suit at law" citing to *Talon Plumbing and Heating v. Mont. Dept. of Lab. and Indus.*, 2008 MT 376, ¶ 24, 346 Mont. 499, 198 P.3d 213.

¶25    Whether or not a party is entitled to attorney fees is strictly a question of law, and we will review the district court's grant or denial of attorney fees for correctness. *Avanta Fed. Credit Union*, 2009 MT 458, ¶ 22, 354 Mont. 372, 223 P.3d 863. Ordinarily, attorney fees are not awarded in contract disputes absent contractual or statutory authority. *Boehm v. Cokedale*, 2011 MT 224, ¶ 26, 362 Mont. 65, 261 P.3d 994.

¶26    The contract in this case does not contain an attorney fees provision, and no statutory authority exists for an award of attorney fees incurred in seeking judicial review of a decision by the Superintendent of Public Instruction. The District Court did not err in denying Whealon's claim for attorney fees.

10

¶27    The District Court is affirmed.


                                        /S/ JIM RICE


We concur:


/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES C. NELSON